**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA**
**(Charlottesville Division)**

ZAHRIYAH WILSON

        Plaintiff,

v.

BELL PARTNERS, INC.

        Defendant.

Case No. _____
Removed from the Circuit Court
for the City of Charlottesville, Virginia
Case No. 540CL21000454-00

**DECLARATION OF MICHAEL J. NEARY, ESQ.**
**IN SUPPORT OF NOTICE OF REMOVAL**

I, Michael J. Neary, Esq. being over the age of 18, declare under penalty of perjury as follows:

1.    I am an attorney at the law firm of Lerch, Early & Brewer, Chtd. and represent Defendant Bell Partners, Inc. ("Bell Partners") in the above-captioned matter filed by Plaintiff Zahriyah Wilson ("Ms. Wilson") as Case No. 540CL21000454-00 in the Circuit Court for the City of Charlottesville, Virginia (the "State Action").

2.    I make this Declaration to comply with 28 U.S.C. § 1446(a), which requires that Bell Partners' Notice of Removal be filed together with copies of "all process, pleadings, and orders served" on Bell Partners in the State Action.

3.    I am attaching as **Exhibit A** to this Declaration a true and correct copy of the Complaint filed by Ms. Wilson on September 22, 2021, in the State Action.

4.    I am attaching as **Exhibit B** a true and correct copy of a print out from the North Carolina Secretary of State's website obtained on October 21, 2021.

**EXHIBIT 1**

        

5.      I am attaching as **Exhibit C** to this Declaration a true and correct copy of the Commonwealth of Virginia Cover Sheet for Filing Civil Actions filed by Ms. Wilson on September 22, 2021, in the State Action.

6.      I am attaching as **Exhibit D** to this Declaration a true and correct copy of the Summons issued to Ms. Wilson on September 22, 2021, in the State Action.

7.      I am attaching as **Exhibit E** to this Declaration a true and correct copy of the Official Receipt issued to Ms. Wilson on September 22, 2021 in the State Action.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on October 21, 2021

Michael J. Neary, Esq.

2

4300502.1                                                                92110.011

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE CITY OF CHARLOTTESVILLE**
315 East High Street
Charlottesville, Virginia 22902

| | | |
|---|---|---|
| **ZAHRIYAH WILSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. _CL21-454_ |
| | ) | |
| ✓ **BELL PARTNERS, INC.** | ) | |
| | ) | |
| Serve: Steven D. Bell | ) | |
| 4701 Cox Road, Suite 285 | ) | |
| Glen Allen, Virginia 23060 | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Zahriyah Wilson (hereinafter "Plaintiff" or "Ms. Wilson"), and as her Complaint against the Defendant, Bell Partners Incorporated (hereinafter "Defendant" or "Bell Partners"), sets forth the following allegations:

## INTRODUCTION

1.      This Complaint presents civil claims alleging racial discrimination and retaliation against Defendant in violation of the Virginia Human Rights Act, Virginia Code Section 2.2-3900 et seq., which makes it unlawful for an employer to fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status, pregnancy, childbirth or related medical

EXHIBIT 1-A

conditions including lactation, age, military status, disability, or national origin or otherwise limit, segregate, or classify employees or applicants on the same bases.[1]

2.      This Complaint is also an action for wrongful termination in violation of Virginia Code Section 40.1-27.3, the Virginia Whistleblower Protection Law. The Virginia Whistleblower Protection Law prohibits employers from "discharging, disciplining, threatening, discriminating against, or penalizing an employee, or from taking other retaliatory action with respect to the employee's compensation, terms, conditions, location, or privileges of employment, because the employee engages in protected activity."[2] Protected activity under the Act includes reporting in good faith violations of any federal or state law or regulation, either internally to a supervisor or to any governmental body or law-enforcement official.[3]

## PARTIES

3.      Plaintiff is a citizen of the United States of America and was a resident of Charlottesville, Virginia at all times relevant to this Complaint.

4.      At all times relevant to this Complaint, Ms. Wilson was employed with Bell Partners. Ms. Wilson worked at Bell Partners' location at Fifth Street Place Apartments, 411 Afton Pond Court, Charlottesville, Virginia 22902.

5.      Defendant Bell Partners is a registered business in the Commonwealth of Virginia that deals with residential apartment communities. The Defendant's headquarters are located at 300 North Greene Street, Suite 1000, Greensboro, North Carolina 27401.

6.      The Defendant is an "employer" as defined by Virginia Code Section 2.2-3903 and is covered by, and subject to, the provisions of Virginia Human Rights Act.

---

[1] Va. Code § 2.2-3905 (B).
[2] Va. Code § 40.1-27.3(A).
[3] Id.

### JURISDICTION AND VENUE

7.      This action seeks declaratory judgment, compensatory damages, and attorneys' fees for Defendant's violations of state law.

8.      This Court has jurisdiction pursuant to Virginia Code Section 17.1-513, because Plaintiff's claims are civil in nature and arise from events that occurred within the Commonwealth of Virginia.

9.      This Court has jurisdiction over Defendant under Virginia Code Section 8.01-328.1, because Defendant conducts business within the Commonwealth of Virginia.

10.     Venue is proper under Virginia Code Section 8.01-257 et seq., because the City of Charlottesville is a forum convenient to the parties and the witnesses. The events giving rise to Plaintiff's claims occurred within the City of Charlottesville, Virginia.

11.     Ms. Wilson has satisfied the procedural and administrative requirements of Virginia Code Section 2.2-522, and all conditions precedent to the filing of this suit have been performed or have occurred:

     a.      Ms. Wilson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Office of the Attorney General ("OAG") for the Commonwealth of Virginia against the Defendant on or about May 5, 2021, styled EEOC Charge Number 438-2021-00918 ("the Charge").

     b.      The Charge alleged discrimination and retaliation based on race in violation of the Virginia Human Rights Act.

     c.      On June 25, 2021, the EEOC issued a Notice of Right to Sue ("Notice") to Ms. Wilson, in which the EEOC determined that it would not proceed

further with its investigation and made no determination about whether further
investigation would establish violations of the statute.

      d.      This Complaint was filed within ninety days of Ms. Wilson's receipt
of the Notice and determination, in accordance with the Plaintiff's rights pursuant
to Virginia Code Sections 2.2-3907 and 2.2-3908.

## FACTS

12.      On July 15, 2019, the Defendant hired Ms. Wilson (African American) as the
Assistant Community Manager ("ACM") of Fifth Street Place Apartments, a luxury living
apartment complex in Charlottesville, Virginia. Ms. Wilson was the only African American
employee on her team.

13.      As the ACM, Ms. Wilson was responsible for assisting the Community Manager
with the oversight and training of the leasing team; providing support to leasing consultants to
ensure strict adherence to the Fair Housing Act; supporting leasing consultants in the leasing of
apartments; ensuring that Fair Housing guidelines were followed; and verifying potential resident
applications.

14.      Ms. Wilson was also responsible for rental collections, bank deposits, and oversight
of the  administration of accounting functions for the community; met with the Community
Manager and Regional Manager and discussed community performance; conducted  monthly
market surveys and provide pricing recommendations; maintained resident lease files and
computer records for the community; processed notices to vacate; managed evictions; addressed
resident concerns resolution; and performed administrative duties as assigned by the Community
Manager.

15.      Amy Boyers (Caucasian), Community Manager, supervised Ms. Wilson's work. Ms. Wilson also worked with Joshua Giordano (Caucasian), Leasing Agent, and Erin Beardsley (Caucasian), Regional Manager, in coordination with her job tasks.

16.      Around the end of July 2019, Ms. Wilson experienced discrimination based on her race when a Caucasian coworker expressed frustration that her friend and former coworker, also Caucasian, was not hired as ACM. The employee told Ms. Wilson that she believed the Defendant just needed someone of color in the position.

17.      The same employee began monitoring and reporting Ms. Wilson's activities to Ms. Boyers, which led her to check in frequently with Ms. Wilson about her work. Ms. Wilson reported concerns to Ms. Boyers about that employee's conduct – specifically that she stated that Ms. Wilson's race was the reason the Defendant hired her. Ms. Wilson also reported that she felt that the employee was harassing her.

18.      In response, Ms. Boyers told Ms. Wilson, "Being Black helps diversity," but that was not primary reason for the hiring selection. Ms. Boyers instructed Ms. Wilson to ignore the employee because she would soon be gone, stated that the harassment was harmless and she should "let it go," and advised her to remind the employee that she [Wilson] was the boss.

19.      During the entirety of Ms. Wilson's employment, she heard several flagrantly racist comments and jokes from her coworkers, which made her feel uncomfortable at work. Ms. Wilson was advised not to be "too uptight too early," so that she would be perceived as being able to take a joke, rather than as an overly sensitive Black person.

20.      In February 2020, Mr. Giordano aggressively approached Ms. Wilson and demanded that she stay out of the leasing queue, a database of prospective tenant leads for leasing managers to secure new tenants. Ms. Wilson reported Mr. Giordano's conduct to Ms. Boyers.

21.     In response, Ms. Boyers told Ms. Wilson to "deal with it" and that she must learn how to be a manager. Ms. Boyers also told Ms. Wilson that Bell Partners would not promote her if she continued to report mistreatment.

22.     Ms. Wilson felt that Ms. Boyers was treating her disparately compared to her Caucasian coworkers and further, that she dismissed her voiced concerns. Ms. Wilson provided Ms. Boyers with specific examples of instances when Ms. Boyers reprimanded her, but did not reprimand her male Caucasian coworkers for the same things.

23.     In response, Ms. Boyers said that was not discriminatory, but that she had a soft spot for men. Ms. Boyers told Ms. Wilson that she [Wilson] was aggressive to her, but when men would speak in aggressive tones, they were "harmless," "grumpy," or "having a bad day." Ms. Boyers told Ms. Wilson that she was simply too emotional about how others treated her and that she was politicizing it.

24.     Ms. Wilson was Mr. Giordano's manager in the organizational chart, but Ms. Boyers allowed him to dictate where the new lease commissions should go. Mr. Giordano was permitted to treat Ms. Wilson poorly simply because he had more years of housing experience. When Ms. Wilson reported Mr. Giordano's mistreatment, Ms. Boyers stated that she would not speak to him about the matter because of his anger management issues.

25.     Bell Partners gave Mr. Giordano an enhanced compensation structure and altered policies to ensure that he received commissions on leads and tours that were generated by other employees. Ms. Wilson explicitly stated to Ms. Boyers that if she was the leasing agent and Mr. Giordano was the manager, Bell Partners would not have advocated in the same way.

26.     In May 2020, in the presence of employees, Ms. Boyers yelled, "Fuck this Black Lives Matter bullshit! I am sick of hearing it!" in response to Bell Partners' notification about

mandatory employee training on diversity and inclusion. Ms. Boyers complained that the training requirement was stupid, that affirmative action was an example of reverse racism that resulted in people of color being offered jobs that they did not deserve, and as a Caucasian woman, she felt uncomfortable hiring African Americans.

27.     During the spring and summer of 2020, Ms. Boyer continued to make racially insensitive comments in the work place in reference to the murders of George Floyd and Breonna Taylor, protests against racism, and the media coverage of these events.

28.     Ms. Wilson told Ms. Boyers that her comments created a hostile work environment and upset her as an African American woman.

29.     In response, Ms. Boyers commented that Ms. Wilson had nothing to fear because she [Wilson] was not overly liberal and she did not view Ms. Wilson in the same way as the "others." Ms. Wilson understood that Ms. Boyers referred to "others" to mean other African Americans.

30.     Ms. Wilson was offended by Ms. Boyers' responses and told her that she had liberal viewpoints, but kept her viewpoints private because of the racist comments openly shared by her coworkers and management.

31.     In response, Ms. Boyers stated that the protestors were destroying the country.

32.     Ms. Wilson asked Ms. Boyers to stop gas lighting her otherwise, she would isolate herself in the office.

33.     In June 2020, during a team meeting, Ms. Wilson reported her concerns about racial discrimination and disparate treatment to Ms. Beardsley. Ms. Beardsley asked Ms. Wilson to provide a written account of the disparate treatment via email to her.

34.    Afterward, Ms. Boyers asked Ms. Wilson not to submit a written report to Ms.
Beardsley and stated that she was sorry for being untruthful to avoid Mr. Giordano's anger
problems. Ms. Boyers explained that she believed that if Mr. Giordano received all of the
commissions, even if Ms. Wilson earned some of the commissions, the issues would be resolved.

35.    Ms. Wilson felt that Ms. Boyers was more concerned about the potential
repercussions and attempted to interfere with her right to report racially disparate treatment.
Despite this, Ms. Wilson sent Ms. Beardsley a written report of the racially disparate treatment
and hostile work environment she had endured.

36.    Ms. Beardsley failed to follow up with Ms. Wilson after she submitted the report.
However, Ms. Wilson assumed that management had spoken to Ms. Boyers because her behavior
because more hostile.

37.    On June 11, 2020, Ms. Boyers was aggressive to during the morning team meeting.
Ms. Boyers told the team that Ms. Beardsley spoke to her and she got her "ass chewed out." Ms.
Boyers told the team it was not going to be a good day for anyone. Per normal procedures, Ms.
Wilson attempted to notify Ms. Boyers of her morning tour so that she could present to the team
early. In front of the team, Ms. Boyers snapped at Ms. Wilson, told her that she did not care, and
that she needed to wait her turn, resulting in a late tour.

38.    Ms. Boyers' hostile behavior continued and she belittled Ms. Wilson in front of
other employees and residents.

39.    Ms. Wilson learned that Ms. Boyers told another employee that since Ms. Wilson
"wouldn't keep her mouth shut," she would make Ms. Wilson miserable until she left or "snapped."

40.    On June 15, 2020, Ms. Boyers issued Ms. Wilson a disciplinary notice and placed
her on a coaching plan. Levi Terrell (Caucasian), Maintenance Supervisor, was also present during

the meeting. Ms. Boyers alleged that Ms. Wilson was insubordinate for taking her break after 2

p.m. on a few occasions. However, Ms. Boyers had prior knowledge of Ms. Wilson's schedule

changes.

41.    In July 2020, Ms. Boyers disparaged the Defendant's instruction to property

managers to discuss the impact that the Black Lives Matter protests may have on its employees

and to allow employees to take time off for mental health. Ms. Boyers told the team that she did

not believe in the Black Lives Matter movement and that it was reverse racism by excluding white

people.

42.    Ms. Wilson reported Ms. Boyers' comments to Human Resources and complained

that she felt uncomfortable at work as a result.

43.    In October 2020, Ms. Boyers issued several disciplinary actions against Ms. Wilson

for minor infractions. Ms. Boyers did not discipline Ms. Wilson's Caucasian coworkers for the

same actions.

44.    In October 2020, Ms. Boyers instructed Ms. Wilson to give all potential resident

tours to Mr. Giordano and to refrain from sending emails reporting that she was discriminatory.

45.    Ms. Wilson heard Ms. Boyers state that she was happy that an African American

employee's employment was terminated because she no longer had to deal with his "house slave"

behavior anymore. Ms. Wilson understood Ms. Boyers' comment to reference the former

employee's standard response of "Yes, ma'am" when asked to do tasks.

46.    Ms. Wilson also observed Ms. Boyers mocking the same African American

employee's dialect and speech. Ms. Boyers often changed his words and said, "Yes masta! I'll be

good," and a variation of other derogatory statements and behaviors, which included holding her

posture hunched over, depicting a submissive slave.

47.    In November and December 2020, Ms. Boyers continued to make discriminatory statements, called Vice President Kamala Harris a "Black bitch," and told Ms. Wilson that she needed to be able to "take a joke."

48.    Ms. Boyers continued to refuse to pay Ms. Wilson for her earned commissions based on a company-wide Google review competition.

49.    Ms. Boyers continued to discriminate and retaliate against Ms. Wilson by belittling her, speaking aggressively to her, and by her openly hostile behavior towards her. In contrast, Ms. Boyers did not treat Ms. Wilson's Caucasian coworkers in the same manner and treated them respectfully. Ms. Wilson continued to feel that the Defendant refused to take corrective action and the working conditions became worse.

50.    On January 4, 2021, the Defendant terminated Ms. Wilson's employment. Ms. Boyers and Ms. Beardsley met with Ms. Wilson. Ms. Beardsley blamed Ms. Wilson's termination on the Defendant's financial hardships. The Defendant, however, failed to provide any documentation that her termination was a reduction in force, presumably in part due to the pandemic.

51.    Subsequently, Ms. Wilson learned that several of her employment documents were removed from her employee portal account.

52.    On May 5, 2021, Ms. Wilson filed the Charge with the OAG and the EEOC, which alleged claims of racial discrimination and retaliation against her by the Defendant.

53.    On June 25, 2021, the EEOC, and on behalf of the OAG, issued a determination and the Notice.

## COUNT I:
## RACIAL DISCRIMINATION IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

54.      Ms. Wilson hereby incorporates each of the above paragraphs as though fully set forth herein.

55.      At all times relevant to this Complaint, Ms. Wilson was an employee of Bell Partners.

56.      Ms. Wilson, as an African American female, is a member of a protected class as defined by the Virginia Human Rights Act.

57.      Defendant, through its members, supervisors, employees, and agents, discriminated against Ms. Wilson because of her race.

58.      Defendant, through its members, supervisors, employees, and agents, discriminated against Ms. Wilson because of her race by failing to properly investigate her concerns and protect her from racial discrimination.

59.      Defendant, through its members, supervisors, employees, and agents, acted with a reckless disregard for Ms. Wilson's civil rights as afforded by the Virginia Human Rights Act.

60.      As such, Defendant discriminated against Ms. Wilson in violation of the Virginia Human Rights Act.

61.      Ms. Wilson suffered financially, emotionally, mentally, and physically because of the racial discrimination that she experienced. Because of this matter, Ms. Wilson had to relocate out of state and move in with a family member.

## COUNT II:
## RETALIATION IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

62.     Ms. Wilson hereby incorporates each of the above paragraphs as though fully set forth herein.

63.     Ms. Wilson engaged in protected activity when she directly confronted Ms. Boyers about her racially disparate treatment against her, including her report of Mr. Giordano's mistreatment.

64.     Ms. Wilson engaged in protected activity when she reported racial discrimination and disparate treatment by Ms. Boyers to the Defendant.

65.     The Defendant and Ms. Boyers retaliated against Ms. Wilson by issuing several unwarranted and unfair disciplinary notices, including a coaching plan, after she engaged in protected activity.

66.     The Defendant retaliated against Ms. Wilson when it terminated her employment after she repeatedly reported concerns of racial discrimination, hostile work environment, and disparate treatment.

67.     The Defendant discharged Ms. Wilson after she continued to report concerns of racial discrimination, a hostile work environment, and disparate treatment, as is protected by the Virginia Human Rights Act.

68.     Ms. Wilson has suffered financially, emotionally, mentally, and physically because the Defendant retaliated against her.

## COUNT III:
### RETALIATION IN VIOLATION OF VIRGINIA'S WHISTLEBLOWER PROTECTION ACT

69.     Ms. Wilson hereby incorporates each of the above paragraphs as though fully set forth herein.

70.     Ms. Wilson engaged in protected activity when she repeatedly reported instances of racial discrimination and retaliation as violations of federal and state civil rights laws, in good faith, to the Defendant.

71.     The Defendant retaliated against Ms. Wilson by penalizing her with unwarranted and racially disparate disciplinary notices because she engaged in protected activity.

72.     Ms. Boyers instructed Ms. Wilson to stop engaging in protected activity; however, Ms. Wilson continued to report civil rights violations to the Defendant. In response, the Defendant retaliated against Ms. Wilson by terminating her employment.

73.     The Defendant's termination of Ms. Wilson's employment constituted unlawful retaliation in violation of Virginia Code Section 40.1-27.3.

74.     Consequently, Ms. Wilson has suffered damages for lost wages, benefits, and other remuneration.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Zahriyah Wilson requests the following relief:

A.     Entry of judgment in favor of Ms. Wilson on Counts I, II, and III;

B.     Lost wages and benefits, plus six percent interest pursuant to Virginia Code Section 6.2-302, for Count III;

C.     Compensatory damages in an amount to be proven at trial, plus six percent interest pursuant to Virginia Code Section 6.2-302, for Counts I and II;

D.     Other remuneration;

Page 13 of 14

E.  Plaintiff's attorneys' fees and costs of this action; and

F.  Any and other such further relief that this Court deems appropriate.

**JURY DEMAND**

A TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,
Zahriyah Wilson

By Counsel

Barbara A. Queen (VSB No. 47314)
Hope R. Amezquita (VSB No. 74629)
Lawrence Queen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: 804-643-9343
Facsimile: 804-643-9368
bqueen@lawrencequeen.com
hamezquita@lawrencequeen.com

• File an Annual Report/Amend an Annual Report • Upload a PDF Filing • Order a Document Online • Add Entity to My Email Notification List • View Filings • Print a Pre-Populated Annual Report form • Print an Amended a Annual Report form

# Business Corporation

**Legal Name**
Bell Partners Inc.
**Prev Legal Name**
Steven D. Bell & Company

# Information

**SosId:** 0012141
**Status:** Current-Active ⓘ
**Date Formed:** 10/11/1976
**Citizenship:** Domestic
**Fiscal Month:** December
**Annual Report Due Date:** April 15th
    Current**Annual Report Status:**
        **Registered Agent:** CT Corporation System

# Addresses

**Reg Office**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615

**Reg Mailing**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615

**Mailing**
300 North Greene Street
Greensboro, NC 27401

**Principal Office**
300 North Greene Street
Greensboro, NC 27401

# Officers

**Chief Executive Officer**
Jonathan D. Bell
300 North Greene Street

**Treasurer**
Jonathan D. Bell
300 North Greene Street

**Vice President**
Cynthia M. Clare
300 North Greene Street

**EXHIBIT 1-B**

| | | |
|---|---|---|
| Greensboro NC 27401 | Greensboro NC 27401 | Greensboro NC 27401 |

**President**
Lili Dunn
300 North Greene Street
Greensboro NC 27401

**Vice President**
Bell E Durant
300 North Greene Street
Greensboro NC 27401

**Secretary**
Diane Z Huffman
300 North Greene Street
Greensboro NC 27401

**Vice President**
Cannon F Joseph
300 North Greene Street
Greensboro NC 27401

**Vice President**
Bochilo N Nickolay
300 North Greene Street
Greensboro NC 27401

**Vice President**
John E. Tomlinson
300 North Greene Street
Greensboro NC 27401

**Chief Financial Officer**
John E. Tomlinson
300 North Greene Street
Greensboro NC 27401

# Stock

**Class:** COMMON
**Shares:** 100000
**Par Value** 1

| Print | Highlight Fields | Clear All Data |

Case No. **CL21- 454**

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA                                   (CLERK'S OFFICE USE ONLY)

Charlottesville ............................................ **Circuit Court**

Zahriyah Wilson ............ v./In re: ............ Bell Partners, Inc.

PLAINTIFF(S)                                              DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [X] attorney for [X] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [X] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [ ] Other General Tort Liability

## ADMINISTRATIVE LAW
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [X] DMV License Suspension
  - [X] Employee Grievance Decision
  - [ ] Employment Commission
  - [X] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [X] Other Administrative Appeal

## DOMESTIC/FAMILY
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [X] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of U.S. Currency
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [X] Other (please specify)

**VHRA/Whistleblower Protection Act**

[X] Damages in the amount of $ **500,000.00** are claimed.

**September 21, 2021**
DATE

*Barbara Queen* (signature)
[ ] PLAINTIFF [ ] DEFENDANT [X] ATTORNEY FOR [X] PLAINTIFF [ ] DEFENDANT

**Barbara Queen, Esq.**
PRINT NAME

**LawrenceQueen, 701 E. Franklin St., Ste. 700, Richmond, VA 23219**
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

**(804) 643-9343**
TELEPHONE NUMBER OF SIGNATOR

**bqueen@lawrencequeen.com**
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 10/14

| Print |

**EXHIBIT 1-C**        **9.22.2021**

# COMMONWEALTH OF VIRGINIA



CHARLOTTESVILLE CIRCUIT COURT
Civil Division
315 EAST HIGH STREET
CHARLOTTESVILLE  VA  22902
(434) 970-3766

Summons

To: STEVEN D BELL                          Case No. 540CL21000454-00
4701 COX ROAD
SUITE-285
GLEN ALLEN VA 23060

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Wednesday, September 22, 2021

Clerk of Court: LLEZELLE AGUSTIN DUGGER

by _____ _____
(CLERK/DEPUTY CLERK )

Instructions:      COMPLAINT

Hearing Official:

Attorney's name:      QUEEN, BARBARA; ESQ
701 E FRANKLIN ST
STE. 700
RICHMOND VA 23219                     EXHIBIT  1-D

Receipt : 21000003074

Page 1 of 1



**OFFICIAL RECEIPT**
**CHARLOTTESVILLE CIRCUIT COURT**
**CIVIL**

DATE : 09/22/2021          TIME : 11:47:56

RECEIPT # : 21000003074    TRANSACTION # : 21092200005

CASHIER : GTW              REGISTER # : A500

CASE COMMENTS : WILSON, ZAHRIYAH v. BELL PARTNERS, INC

SUIT AMOUNT : $500,000.00

ACCOUNT OF : WILSON, ZAHRIYAH

PAID BY : LAWRENCE & ASSOCIATES

CHECK : $295.00          CHECK NUMBER : 2946

DESCRIPTION 1 : COM:COMPLAINT - CATCH-ALL ( VHRA/WHISTLEBLOWER P A)

2 : PLAINTIFF: WILSON, ZAHRIYAH

3 : NO HEARING SCHEDULED

CASE # : 540CL2100045400

FILING TYPE : COM          PAYMENT : FULL PAYMENT

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $25.00 |
| 106 | TECHNOLOGY TRST FND | $5.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 228 | COURTHOUSE CONSTRUCTION FEE (CHCF) | $3.00 |
| 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $240.00 |

TENDERED : $    295.00

AMOUNT PAID : $    295.00

COURT COPY                    CLERK OF COURT : LLEZELLE A. DUGGER                    RECEIPT COPY 2 OF 2

**EXHIBIT 1-E**